IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES

        Plaintiff,

vs.

SERGIO SALDIVAR GUTIERREZ

        Defendant.

Case No. 1:11-cr-30009-AA-3

**OPINION AND ORDER**

AIKEN, District Judge:

Now before the Court is defendant Sergio Saldivar Gutierrez' Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 165. Gutierrez seeks compassionate release, asserting that his asthma, allergic rhinitis, and hypoglycemia place him at high risk of severe illness and complications from the 2019 novel Coronavirus ("COVID-19"). Doc. 165 at 9. The government opposes his motion. For the following reasons, the motion is DENIED.

STANDARDS

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release under § 3582(c)(1)(A) provides an exception in rare cases. Section 3582(c)(1)(A) authorizes a court to modify a defendant's sentence if it finds that two conditions have been satisfied: (1) that "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, the Court must "*consider*[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent applicable[.]" *Id*. (emphasis added).

Until 2018, § 3582 allowed compassionate release only on a motion by the Bureau of Prisons ("BOP"). The First Step Act, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended § 3582 to authorize courts to grant compassionate release motions filed by defendants where they had petitioned BOP to bring a motion on the defendants' behalf and either they had exhausted all administrative appeals after a denial or thirty days had elapsed since the Warden received their request.

The relevant policy statement for sentence reductions under the compassionate release statute is found in the U.S. Sentencing Guidelines, § 1B1.13. The policy statement defines several "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(1)(A) & cmt. 1. There is an ongoing controversy among the district courts about whether this policy statement remains binding given the intervening

First Step Act. *Compare United States v. Joling*, No. 6:15-cr-00113-AA, 2020 WL 1903280, at *3 (D. Or. Apr. 17, 2020); *United States v. Brown*, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019); *with United States v. Lum*, No. 18-cr-00073-DKW, 2020 WL 3472908, at *2–3 (D. Haw. June 25, 2020); *United States v. Kealoha*, Nos. CR-17-00555-DKW/CR-04-00265-DKW, 2020 WL 3735773, at *5 (D. Haw. July 6, 2020). This Court has adopted the majority position that § 1B1.13, as written, does not constrain the Court's ability to find extraordinary and compelling circumstances. *See Joling*, 2020 WL 1903280, at *3. That said, the policy statement remains instructive. *See United States v. Hanson*, No. 6:13-cr-00387-AA-1, 2020 WL 3605845, at *3 (D. Or. July 2, 2020); *United States v. Haft*, No. 3:12-cr-42-SI, 2020 WL 3412195, at *2 (D. Or. June 22, 2020).

## DISCUSSION

On October 3, 2011, Gutierrez pleaded guilty to a felon in possession of firearms charge in violation of 18 U.S.C. § 922(g)(1). The Court sentenced Gutierrez to a mandatory minimum term of 180 months under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), that began on November 17, 2011. Doc. 89 at 2; doc. 93 at 1–2. He has served 138 months of his sentence including good behavior. Doc. 165 at 2; *see* doc. 35. Gutierrez was first incarcerated at FCI Lompoc. Doc. 165 at 7. Through hard work and good behavior, Gutierrez earned a transfer to the low-security prison work camp at FCI Atwater. He is scheduled for a transfer to community corrections on October 23, 2023. *Id.* Gutierrez has apparently exhausted administrative appeals because he filed a request for compassionate relief with the Warden of FCI Atwater

on April 26, 2020.  Doc. 165 at 3.  The Government does not oppose this motion on exhaustion grounds.  The Court heard oral argument on this matter on July 7, 2020.

Gutierrez asks the Court to reduce his sentence to time served.  Gutierrez contends that he is at risk of more severe COVID-19 symptoms, if infected, because of his age, body mass index ("BMI"), and underlying conditions.  He asserts that this increased risk meets the extraordinary and compelling reasons evaluation under § 3582(c)(1)(A).  Gutierrez also emphasizes his record while incarcerated, which includes involvement in programming and placement in the low security work camp.  Doc. 165 at 2.  He argues that his accomplishments demonstrate that the time he has served is sufficient to comply with the purposes of § 3553(a).

The purposes of sentencing, including rehabilitation, are factors that the Court must *consider* when determining whether compassionate release is appropriate under § 3582(c).  But even if such considerations support release, the Court cannot grant a compassionate release motion unless it finds that extraordinary and compelling reasons exist.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).  Underlying medical conditions that pose an increased risk of severe COVID-19 symptoms may constitute extraordinary and compelling reasons for compassionate release as a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care."  F.S.S.G. § 1B1.13 cmt. 1(A)(ii)(I).  Generalized concerns about contracting COVID-19 do not meet the threshold requirement of "extraordinary and compelling" circumstances.  *Riley v. United States*, Nos. C19-1522-JLR/CR14-0113JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020),

*appeal docketed*, No. 20-35334 (9th Cir. Apr. 13, 2020).  On this record, the Court cannot find that Gutierrez has demonstrated that his underlying conditions increase his risk of severe COVID-19 symptoms to the degree necessary to meet that standard.

Gutierrez asserts that he is at higher risk for severe symptoms or death from COVID-19 due to his age, BMI, and underlying health issues.  Gutierrez is 48 years old, has a BMI of 27, and alleges that he suffers from allergic rhinitis, asthma, and hypoglycemia.  The CDC states that the risk of severe COVID-19 symptoms increases with age, but 48 does not appear to present an extraordinarily increased risk.  *Older Adults*, CTRS. FOR DISEASE CONTROL & PREVENTION: CORONAVIRUS DISEASE 2019 (COVID-19)  (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html  (last  visited  July  20,  2020)  (showing  84.6 hospitalizations per 100,000 people aged 40–49, compared to 136.1 for people aged 50–64 and 198.7 for people aged 65–74).  Furthermore, Gutierrez' BMI of 27 does not exceed the threshold BMI of 30 listed by the CDC as increasing the risk of severe COVID-19 symptoms due to obesity.  *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION: CORONAVIRUS DISEASE 2019 (COVID-19) (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2F coronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 20, 2020) (listing conditions such as chronic pulmonary obstructive disease, immunocompromised state, serious heart conditions, and type 2 diabetes).  Gutierrez suffers from hypoglycemia and allergies and also reports a

history of asthma. Doc. 170 Ex. B at 7. However, the CDC lists none of these conditions among those that put people of all ages at "increased risk" of severe illness from COVID-19. *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION: CORONAVIRUS DISEASE 2019 (COVID-19) (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2F coronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 20, 2020) (listing conditions such as moderate to severe asthma, hypertension, and type 1 diabetes); *see also United States v. Dean*, No. 3:18-cr-00119-SI, 2020 WL 3073199, at *4–5 (D. Or. June 10, 2020); *United States v. Wooley*, No. 6:13-cr-00224-AA, 2020 WL 2490093, at * 2 (D. Or. May 14, 2020).

Although moderate to severe asthma is a risk factor listed by the CDC, the record before the Court does not suggest that Gutierrez' condition is "moderate to severe" for two reasons. First, Dr. McNally, Associate Professor of Pediatric Hospital Medicine at University of California, San Francisco, made the only asthma diagnosis in the record based on his review of Gutierrez' medical records. Doc. 170 Ex. H at 2. Dr. McNally did not specify the severity of Gutierrez' asthma. Gutierrez' medical records, on the other hand, contain references to his "history" of asthma. Doc. 170 Ex. B at 1, 7. Second, there is no evidence that Gutierrez has experienced asthma-related symptoms while incarcerated. His oxygen saturation has routinely been greater than 90%, his treatment notes do not include any report of wheezing or other breathing difficulties, and a 2018 examination lists the condition as "stable." Doc.

170 Ex. B at 7. Accordingly, this condition appears mild and well-controlled. *See* Doc. 170 Ex. B at 7; *Haft*, 2020 WL 3412195, at *3 (finding that defendant could manage asthma condition in a facility that reported no COVID-19 cases).

Dr. McNally also stated that Gutierrez' hypoglycemia, coupled with the physiologic stress of infection, reduced intake of food and drink, "and possible disruption of his endogenous hormonal control of blood sugar" place Gutierrez at "higher risk for organ damage, including significant neurologic injury." Doc. 170 Ex. H at 4. Dr. McNally observed that Gutierrez' allergic rhinitis and asthma, though perhaps not severe conditions alone, "are suggestive of chronically inflamed tissues in the respiratory tract." *Id.* Dr. McNally noted that severe or chronic inflammation "may make it easier for viruses to invade these cells and may also predispose the person to life-threatening secondary infection" and that chronic inflammation "raise[s] concern because of the phenomenon in some patients of an inflammatory or 'cytokine' storm."[1] *Id.* Finally, Dr. McNally opined that "it is probable that the *cumulative* risk" of Gutierrez' demographics and conditions "is greater, and the risk may be additive or synergistic." *Id.* (emphasis in original).

---

[1] Dr. McNally does not cite sources to support the observation of an "'inflammatory' or 'cytokine' storm" in some COVID-19 patients or that COVID-19 patients with types of chronic inflammation are more likely to experience "cytokine storm." *See* Doc. 170 Ex. H at 4. Nevertheless, this information appears to be within the scope of Dr. McNally's expert knowledge. Dr. McNally's report also does not explain what a "cytokine storm" is. The NCI Dictionary of Cancer Terms from the National Cancer Institute of the National Institutes of Health defines "cytokine storm" as "[a] severe immune reaction in which the body releases too many cytokines into the blood too quickly[,] with [s]igns and symptoms [that] include high fever, inflammation . . . , and severe fatigue and nausea[,]" and may "[s]ometimes . . . be severe or life threatening and lead to multiple organ failure." *Cytokine Storm*, NAT'L CANCER INST.: DICTIONARY OF CANCER TERMS, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/cytokine-storm (last visited July 20, 2020).

The Court recognizes that the risks described by Dr. McNally show that a COVID-19 infection could be life-threatening for Gutierrez. However, given the medical record before the Court and the current circumstances at Atwater, the Court cannot find that this risk is more than speculative at this point. Although Dr. McNally noted that Gutierrez' hypoglycemia could be a symptom of severe underlying conditions like pancreatic insulinoma or diabetes,[2] as Dr. McNally reported, the diagnostic testing thus far has been inconclusive. Doc. 170 Ex. H at 3. Moreover, Gutierrez' medical records show that his hypoglycemia has so far been controlled by prescription glucose tablets. Doc. 170 Ex. G at 98. Similarly, his rhinitis—accompanied by nasal obstruction and congestion and inflammation of his turbinates—appears to be seasonal and well controlled by over-the-counter inhaled nasal steroids. Doc. 170 Ex. B at 11; doc. 170 Ex. G at 67. Finally, as discussed above, Gutierrez' medical record does not support a moderate to severe asthma diagnosis and this condition is also well controlled.

The circumstances at Atwater, and particularly numbers of staff and inmates who have tested positive for COVID-19, also impact the Court's analysis of extraordinary and compelling circumstances. *See United States v. Barber*, No. 6:16-cr-00446-AA, 2020 WL 2404679, at *4 (D. Or. May 12, 2020); *United States v. Connell*, No. 18-cr-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020). Though the Court is concerned that the number of staff with COVID-19 has doubled from 3 to 6

---

[2] Insulinomas are a rare pancreatic tumor that secretes pro-insulin. Doc. 170, Ex. H at 4. As discussed above, Dr. McNally is concerned that, whether or not an insulinoma is the cause of Gutierrez' hypoglycemia, Gutierrez' reduced ability to control his blood sugar, coupled with the physiological stress of a COVID-19 infection, could pose a risk of organ damage. *Id.*

since the July 7 hearing and one inmate has now tested positive, the overall numbers remain low.  *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS (July 20, 2020), https://www.bop.gov/coronavirus/ (last visited July 20, 2020).  The Court cannot find that Gutierrez has such a high likelihood of contracting COVID-19, or that Atwater will not be able to address his medical needs if he contracts the virus, so as to present extraordinary and compelling reasons for his release at this time. *C.f.*, *e.g.*, *Hanson*, 2020 WL 3605845, at *2 (describing the strain on medical staff at Terminal Island due to the presence of 706 positive cases, of which defendant had recently been one and noting that defendant had pulmonary embolisms, severe asthma, chronic lung disease, and observable lung damage); *Barber*, 2020 WL 2404679, at *4 (noting pandemic conditions at FCI Lompoc, where there were nearly 900 positive cases, including defendant with hypertension, obesity, and diabetes); *Joling*, 2020 WL 1903280, at *4 (noting that, at the time, FMC Butner had the highest number of cases in the nation and defendant suffered from hypertension, prostate cancer, and nasal passage cancer).

The Court therefore denies Gutierrez' motion with leave to renew if his medical conditions increase in severity or documentation about his conditions changes, if he tests positive for COVID-19, or if conditions at Atwater change and impact his ability to access medication or receive essential medical treatment.  As the Court explained at the hearing, Gutierrez should keep in close contact with his attorney, who should immediately notify the Court if conditions change and the Court will consider the renewed motion on an expedited basis.

Finally, the Court once again wishes to recognize Gutierrez' exemplary conduct while incarcerated. Gutierrez has no in-custody disciplinary history. He has earned several certificates in anger management, conflict de-escalation, and non-violent conflict resolution. Doc. 170 1t 175–88. He has also involved himself in classes building job-skills including United States History, Theology, Welding, Leatherworking, Cross-Stitch, and Crocheting. *Id*. at 189–200. He has also completed extensive programming relating to drug avoidance, criminal thinking, and avoiding domestic altercations. *Id*. at 210. His exemplary conduct while in prison combined with his extensive engagement in self-betterment programs all suggest that he has embraced the need for treatment and earnestly tried to turn his life around. He has earned the Court's respect for his hard work, his self-discipline, and his exemplary record during incarceration. Though the rare and extraordinary nature of compassionate release constrains the Court's ruling on the present motion, the Court sincerely looks forward to the day that Gutierrez returns to the community and can contribute with the skills that he has obtained.

## CONCLUSION

For the foregoing reasons, Gutierrez' motion for compassionate release is DENIED without prejudice.

IT IS SO ORDERED.

Dated this 29th day of July 2020.


_____/s/ Ann Aiken_____

Ann Aiken
United States District Judge